# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

| | | |
|---|---|---|
| **ALLEN JAMEL ROBINSON** | * | **DOCKET NO.  17-0247; SECTION "P"** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **DARRYL VANNOY** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

*Pro se* Petitioner Allen Jamel Robinson, an inmate in the custody of the Louisiana State Penitentiary in Angola, Louisiana, filed the instant Petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on February 7, 2017. [doc. #1]. Petitioner attacks his October 15, 2012 convictions for aggravated second degree battery and second degree kidnapping, and his sentence of 110 years imposed thereon by Louisiana's Fourth Judicial District Court, Ouachita Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

## Background Facts and Procedural History

The underlying facts in this case have been set forth by the Louisiana Second Circuit Court of Appeal as follows:

> Robinson lived with his girlfriend, Ester Freeman, and the two had a five-month-old daughter at the time of the offenses. Ester is mildly to moderately developmentally delayed. Robinson worked on cell towers and had been employed by the same company for approximately 12 years. He was gone from home several weeks, if not months, at a time working, and Ester would remain at the home with their daughter while he was away. On Friday, October 1, 2010, Robinson returned home from working out of town, earlier than expected by Ester. He arrived at the couple's apartment sometime between 4:00–5:00 p.m. and began his brutal attack against Ester.
>
> Tonia Hamilton, a previous girlfriend and mother of two of Robinson's children, telephoned Robinson because he was supposed to watch the children, but he had failed to show up. According to Tonia's testimony at trial, Robinson advised Tonia

that he could not help with the children because "there was blood everywhere" in the apartment. Robinson told Tonia that he and Ester had been fighting. Tonia threatened to call the police until Robinson allowed Tonia to speak to Ester to make sure she was all right. Fearing something was amiss, Tonia went to the couple's apartment. She testified at trial that the baby was on the couch, and she found Ester hiding behind the bathroom door—horribly burned and bleeding from her ear, face and head. The two women convinced Robinson to allow Ester to get treatment at the emergency room by assuring him that they would say that someone else had inflicted the injuries on Ester. Tonia drove Ester to the hospital with Robinson also in the vehicle.

At the hospital, Ester's condition was brought to the attention of Corporal Henry Foy of the Monroe Police Department. He asked Ester who had inflicted her injuries, which he described at trial as "the most horrific burns I've seen since I was involved in the Gulf War." Ester informed Cpl. Foy that Robinson had beaten and burned her. As Cpl. Foy approached Robinson in the waiting area, Robinson attempted to leave, but Cpl. Foy detained him, *Mirandized* him, and arrested him. Since the address where the incident occurred was outside the city limits, Cpl. Foy called the Ouachita Parish Sheriff's Office ("OPSO"). Deputies Timothy Klick and Paul Zuber with the OPSO responded and took custody of Robinson. Deputy Klick again read Robinson his *Miranda* rights.

Robinson was initially charged by indictment with the attempted second degree murder of Ester Freeman. The charge was later amended to aggravated second degree battery, a violation of La. R.S. 14:34.7, and second degree kidnapping, a violation of La. R.S. 14:44.1. After a jury trial, Robinson was unanimously found guilty as charged. He was ultimately sentenced as a second-felony offender and given consecutive sentences amounting to a total of 110 years in prison.

*State v. Robinson*, 127 So.3d 1000, 1003-04 (La. Ct. App. 2d Cir. 2013).

On June 6, 2013, Robinson appealed his convictions to the Second Circuit arguing two claims for relief: (1) insufficient evidence to support a conviction of second degree kidnapping, and (2) excessive sentence. [doc. #15-1, pp. 47-60]. On November 20, 2013, the appellate court affirmed Robinson's convictions and sentence. *Robinson*, 127 So.3d 1000.

On December 16, 2013, Robinson filed a writ application with the Louisiana Supreme Court arguing the same two issues. [doc. #15-2, pp. 14-30]. On May 23, 2014, the Louisiana Supreme Court denied writ without explanation. *State v. Robinson*, 140 So.3d 725 (La. 2014)

(mem.).

On May 18, 2015, Robinson filed an application for post-conviction relief with the state trial court asserting two claims for relief: (1) defective indictment, and (2) ineffective assistance of counsel. [doc. #15-2, pp. 55-87; doc. #15-3, 1-22]. On June 30, 2015, the trial court denied Robinson's application. [doc. #15-3, pp. 46-47].

On August 14, 2015, Robinson filed a writ application with the Second Circuit. Robinson raised three new "questions of law" in his brief: (1) "whether the witness has a standing right to plead the 5th Amendment after having signed a sworn affidavit", (2) "whether the court violated its ministerial duties in not reviewing the corroborate evidence which would have supported the affidavit, therefore negating the need for the witness testimony", and (3) "whether the petitioner did meet his burden of proof in support [of] actual innocence through the presentation of the affidavit and corroborate evidence". *Id.* at 48-55. In his memorandum, however, Robinson argued the same claims he argued before the trial court: (1) defective indictment, and (2) ineffective assistance of counsel. *Id.* at 56-61. On September 24, 2015, the appellate court denied writ "[u]pon the showing made." *Id.* at 63.

On October 19, 2015, Robinson filed a writ application with the Louisiana Supreme Court arguing (1) ineffective assistance of counsel; (2) defective indictment; (3) prosecutorial misconduct; and (4) race discrimination in the selection of grand jury foremen in Ouachita Parish and in the selection of petit jurors for Robinson's trial. *Id.* at 65-80. On January 13, 2017, the Louisiana Supreme Court denied writ. *Id.* at 98-99.

On February 7, 2017, Robinson filed the instant federal habeas petition asserting the following claims for relief: (1) defective indictment; (2) ineffective assistance of counsel; (3) prosecutorial misconduct; (4) the trial court erred in denying Robinson's request for an

3

evidentiary hearing on the issue of ineffective assistance of counsel; (5) excessive sentence; and (6) insufficient evidence. [doc. #1-2, pp. 11-12]. The State filed its response on May 15, 2017. [doc. #12]. On June 16, 2017, Robinson filed a reply. [doc. #16].  Thus, the matter is ripe.

## I.    Standard of Review – 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs *habeas corpus* relief. The AEDPA limits how a federal court may consider *habeas* claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the

prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). AEDPA has put into place a deferential standard of review, and a federal court must defer to a state court adjudication on the merits. *Valdez v. Cockrell*, 274 F.3d 941, 950 (5th Cir. 2001). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

## II.    Exhaustion

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1)(A). The Fifth Circuit explained exhaustion as follows:

> The exhaustion requirement is satisfied when the substance of the federal claim is fairly presented to the highest state court on direct appeal or in state post-conviction proceedings, even if the state court fails to address the federal claim, or, if the federal claim is not fairly presented but the state court addresses it *sua sponte*. A claim is fairly presented when the petitioner asserts the claim in terms so particular as to call to mind a specific right protected by the Constitution or alleges a pattern of facts that is well within the mainstream of constitutional litigation.[1]  It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made. Rather, the petitioner must afford the state court a fair opportunity to apply controlling legal principles to the facts bearing

_____

[1] A petitioner does not "fairly present" a claim to a state court if that court must read either a brief before a lower court or a lower court's opinion to locate the claim. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

5

upon his constitutional claim.

*Johnson v. Cain*, 712 F.3d 227, 231 (5th Cir. 2013) (internal quotations marks and citations omitted). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Id.* Likewise, to have "fairly presented" a federal claim, a petitioner must have reasonably alerted the state courts to the federal nature of his claim. *Baldwin*, 541 U.S. at 29-32 (holding a petitioner failed to "fairly present" a claim of ineffective assistance by his state appellate counsel merely by labeling the performance of said counsel "ineffective," without accompanying that label with either a reference to federal law or a citation to an opinion applying federal law to such a claim).

Failure to exhaust is not a jurisdictional defect, *Granberry v. Greer*, 481 U.S. 129, 129-33 (1987), and is an affirmative defense that may be waived by the state's failure to rely upon the doctrine. *Id.* at 131-33; *Magouirk v. Phillips*, 144 F.3d 348, 357 (5th Cir. 1998). Nonetheless, "a federal court may raise sua sponte a petitioner's failure to exhaust state law remedies and apply that doctrine to bar federal litigation of petitioner's claims until exhaustion is complete." *Id.* Similarly, courts may sua sponte raise the issue of procedural default. *Id.*

The State contends that Robinson has exhausted all of his federal claims. However, as will be shown below, some of Robinson's claims are unexhausted. It is well settled that a mixed *habeas* petition should usually be dismissed without prejudice so that the petitioner may either

return to the state courts to exhaust his claims or amend his federal petition and resubmit it, raising only the exhausted claims. *Alexander v. Johnson*, 163 F.3d 906, 908 (5th Cir. 1998). Here, however, while Petitioner's claims are not exhausted in the traditional sense, they are "technically exhausted" because no state remedies remain available. *Coleman v. Thompson*, 501 U.S. 722, 731-33 (1991) (holding that a "habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion" because there are no state remedies available to him). Robinson's unexhausted claims would now be time-barred under Louisiana's two-year limitation period for filing post-conviction relief applications. *See* LA. C. CR. P. art. 930.8; *Bledsue v. Johnson*, 188 F.3d 250, 254 (5th Cir. 1999) ("Procedural default exists where . . . the petitioner fails to exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred."); *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995).

In this scenario, "there is no substantial difference between nonexhaustion and procedural default." *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998). In that respect, the Fifth Circuit has held that when a petition presents both exhausted claims and unexhausted claims that are procedurally barred, the petition should not be dismissed as a mixed petition because there is nothing for the petitioner to exhaust. *Bagneris v. Cain*, 254 F. App'x 351, 352 (5th Cir. 2007); *see also Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) (cited with approval in *Sones*, 61 F.3d at 416) ("[I]f it is obvious that the unexhausted claim would be procedurally barred in state court, we will forego the needless 'judicial ping-pong' and hold the claim procedurally barred from habeas review")).

## II.    Petitioner's Claims

### Claim One: Defective Indictment

Petitioner was initially indicted by grand jury on the charges of attempted second degree murder and second degree kidnapping. A superceding bill of indictment was then filed charging Petitioner with aggravated second degree battery and second degree kidnapping. Robinson argues that his superseding bill of indictment was defective because it was neither signed by the grand jury foreperson nor returned in open court in violation of the Louisiana Code of Criminal Procedure and the Louisiana and federal Constitutions. [doc. #1-2, pp. 17-21].

In his state post-conviction relief application, all of Robinson's arguments related to this claim were based exclusively in state law with the exception of one citation to a United States Supreme Court case. *See Wilder v. Cockrell*, 274 F.3d 255, 260 (5th Cir. 2001) (a fleeting reference to federal law, "tacked onto the end of a lengthy, purely state-law evidentiary argument, does not sufficiently alert and afford a state court the opportunity to address an alleged violation of federal rights."). Thus, the instant claim is unexhausted and barred from review.[2]

---

[2] A petitioner may be excepted from the procedural default rule if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997). To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that the petitioner failed to recognize the factual or legal basis for a claim, or failed to raise the claim or objection despite recognizing it, does not constitute cause for a procedural default. *Id.* at 486.

Here, Petitioner has not offered any cause for his failure to fairly present this claim before the state courts, nor does this Court's review of the record reveal any factor external to the defense that prevented Petitioner from properly raising it. "The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997).

Claim one is thus procedurally barred from review absent a showing that a fundamental miscarriage of justice will occur if the merits of the claim is not reviewed. *Id.* at 497. To establish a fundamental miscarriage of justice, Petitioner must provide this Court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986). To satisfy this standard, Petitioner must show that "but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense." *Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997). Petitioner makes no argument that a fundamental miscarriage of justice will occur if his claim is not reviewed by this Court.

Even assuming this claim is exhausted, this claim lacks merit and is barred from federal habeas review. "The sufficiency of a state indictment is not a matter for federal habeas relief unless it can be shown that the indictment is so defective that it deprives the state court of jurisdiction." *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir.), *cert. denied*, 513 U.S. 854 (1994). "Where the state courts have held that an indictment is sufficient under state law, a federal court need not address that issue." *Id.* A "federal habeas court will not consider such claims '[w]hen it appears . . . that the sufficiency of the indictment was squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case. . . .'" *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985) (quoting *Murphy v. Beto*, 416 F.2d 98, 100 (5th Cir. 1969)).

In the instant case, the Louisiana Supreme Court rejected Robinson's argument that his indictment was defective, specifically holding that his "claim regarding the form of the indictment is without merit." [doc. #15-3, p. 99]. Review of this claim is thus foreclosed. *See Gross v. Cain*, No. 09-3353, 2010 WL 1552739, *14 (E.D. La. Mar. 11, 2010) (prohibiting federal review of defective indictment claim where Louisiana Supreme Court denied the claim in petitioner's post-conviction writ application).

Claim one should be DISMISSED.

Claims Two and Four: Ineffective Assistance of Counsel and the State Court's Failure to Grant an Evidentiary Hearing on Robinson's Ineffectiveness Claims

Robinson asserts that his trial counsel was ineffective in many respects, and he requests the court to "remand this matter for a full evidentiary hearing with the aid of qualified legal assistance." [doc. #1-2, p. 52]. He alleges that counsel was ineffective by (a) failing to

---

Accordingly, Petitioner has failed to overcome the procedural bar to the claim at issue.

investigate a plausible line of defense and to interview witnesses; (b) interfering with Petitioner's right to testify; (c) failing to object to blood evidence; (d) failing to file a motion to quash and subjecting Robinson to double jeopardy; and (e) allowing discrimination in jury selection.

"To assert a successful ineffectiveness claim, petitioner is required to establish both (1) constitutionally deficient performance by his counsel and (2) actual prejudice as a result of his counsel's deficient performance." *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998). "The failure to prove either deficient performance or actual prejudice forecloses an ineffective assistance claim." *Id.* In order to satisfy the first prong, Robinson must prove that his counsel's performance "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). In applying the first prong, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. *See id.* at 689-90. The second prong is satisfied if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

If the petitioner does not make a sufficient showing as to one prong of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). The prongs of the test also need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997). Furthermore, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green*, 160 F.3d at 1042-43.

The Louisiana Supreme Court held that Robinson "fail[ed] to show he received ineffective assistance of counsel under" the *Strickland* standard. [doc. #15-3, p. 99]. It also held

that Robinson did not meet his burden of proof under Louisiana Code of Criminal Procedure article 930.2 as to his claim that counsel denied him his right to testify. *Id.* Finally, the court held that Robinson's "claim regarding the form of the indictment is without merit." *Id.*

### A. Failing to Investigate

Robinson alleges that trial counsel failed to investigate possible lines of defense, including an insanity defense, and to interview available witnesses. [doc. #1-2, p. 35].

An attorney's failure to investigate and to interview witnesses can support a finding of ineffective assistance. *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994). However, in order to establish ineffectiveness, a habeas petitioner must do more than merely allege failure to investigate, and must state with specificity what the attorney's investigation would have revealed, what evidence would have resulted from such investigation, and how such evidence would have altered the outcome of the case. *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994); *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993). A "conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Pape v. Thaler*, 645 F.3d 281 (5th Cir. 2011) (quoting *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009)). Furthermore, there is nothing "professionally deficient or objectively unreasonable" about a trial counsel's failure to make a patently meritless objection or argument. *See Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002).

Robinson fails to allege any specific witnesses that trial counsel failed to interview. He also fails to allege what further investigation of his case would have revealed or how the outcome would have been different. Thus, these claims are too conclusory to warrant habeas relief.

Moreover, a reasonable attorney in Mr. Kincade's position could have concluded that entering a plea of not guilty by reason of insanity would have been a poor defense strategy.

In Louisiana,

> a legal presumption exists that a defendant is sane at the time of the offenses. La. R.S. 15:432. To rebut this presumption of sanity and avoid criminal responsibility, defendant has the burden of proving the affirmative defense of insanity by a preponderance of the evidence. La. C. Cr. P. art. 652. Criminal responsibility is not negated by the mere existence of mental disease or defect. To be exempted of criminal responsibility, defendant must show she suffered a mental disease or mental defect which prevented her from distinguishing between right and wrong with reference to the conduct in question

*State v. Morrison*, 55 So. 3d 856, 868 (La. Ct. App. 2d Cir. 2010). Robinson alleges that he repeatedly burned his girlfriend with an iron because he walked into their apartment and found her cheating on him with another man. Even assuming Robinson's allegations are true, the record is devoid of any indication that Robinson suffered from a mental disease or defect which prevented him from distinguishing between right and wrong at the time of the offense. In a recorded statement given to police,  Robinson was asked if he was "intentionally burning [Freeman] with an iron," and whether he was "doing this out of anger," and Robinson replied, "Yes, sir." [doc. #12-1, p. 77]. Robinson further confirmed that he burned Freeman with an iron as "punishment for what she did, for disrespecting [him]". *Id.* Robinson also admitted to police that he knew what he did was wrong:

> EM: Okay. So at any point during this-this time that you're with [Freeman] at the hospital, did it ever, you know, did it ever occur to you that, you know, you may be fixing to get in trouble? Did that ever–

> AR: Yeah, yeah, yeah.

> EM: Okay.

> AR: Yeah.

EM: So it was-a-at any time did you think about leaving?

AR: No. 'Cause I went in there.

EM: Okay, What made you stay?

AR: 'Cause I was concerned {inaudible) I knew what I did was wrong, man. Out of anger.

*Id.* at pp. 79-80. Anger alone, absent any medical or psychiatric evidence suggesting mental disease or defect, does not render a defendant legally insane under Louisiana law. *See State v. Pier*, 530 So.2d 1253, 1261-62 (La. Ct. App. 2d Cir. 1988) (defendant failed to prove insanity defense because he "offered no medical or psychiatric testimony of his alleged mental defects"). Thus, Robinson cannot show deficient performance in trial counsel's failure to present a meritless defense. This claim should be DISMISSED.

### B. Denied His Right to Testify

Robinson states that he did not testify at his own trial even though he had a strong desire to do so because his trial counsel lied to him about a ten-year plea deal wherein the kidnapping charge would be dropped. [doc. #1-2, p. 30].

"A criminal defendant has the right to take the stand and testify in his or her own defense." *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001). Robinson must overcome "a strong presumption that counsel's decision not to place him on the stand was sound trial strategy." *Id.*

First, the record shows that Robinson's trial counsel, the late Charles Kincade, did not interfere with his right to testify. After the State rested, the trial court asked Mr. Kincade if he was going to call any witnesses. [doc. #14-3, p. 58]. Mr. Kincade requested a five or ten minute recess and asked to meet with Robinson alone. *Id.* at 59. After an extended recess and a meeting

13

with Robinson, the following colloquy took place:

| Mr. Kincade: | We'd like to say that I have conferred with Mr. Robinson. The Court has granted us additional time and that after conferring with him he understands that it is his right, and his alone, ultimately to make that decision with counsel—and advice of counsel, and he has chosen not to take the stand. |
| --- | --- |
| The Court: | All right. Let that be reflected in the minutes. |
| Mr. Kincade: | Is that correct, Mr. Robinson? I'm Sorry? |
| The Court: | Is that correct, sir? |
| Mr. Robinson: | Yes. |
| The Court: | All right. Let that be reflected in the minutes. |

*Id.* at 60-61. Robinson confirmed in open court that he was willingly choosing not to take the stand. As such, there is no indication whatsoever that Mr. Kincade interfered with Robinson's right to testify.

Second, Robinson cannot show deficient performance or prejudice under *Strickland*. Robinson claims that he would have testified that he could not have committed second degree kidnapping because he left to go get Freeman medical supplies and took her to the hospital. He also would have testified about Freeman's alleged unfaithfulness. [doc. #1-2, pp. 30-31].

Based on Robinson's proposed testimony, Mr. Kincade could have decided, as a reasonable attorney would, that the potential risks of Robinson's testimony outweighed the potential benefits. *See Sayre*, 238 F.3d at 635. The jury would likely not take well any insinuation by Robinson that Freeman "deserved what she got" because she was allegedly unfaithful. In any event, Mr. Kincade elicited testimony on his cross-examination of Freeman that Robinson left to go get her medical supplies. [doc. #14-3, p. 43]. Furthermore, as described more fully *infra* under claim six, there was adequate evidence to convict Robinson of second

14

degree kidnapping even if he took stand and testified Louisiana defines second degree kidnapping, in part, as "the imprisoning or forcible secreting of any person" when the victim is "physically injured or sexually abused". LA. R.S. § 14:44.1. The testimony showed the Robinson threatened Freeman and her child if she were to leave. It showed that Robinson kept Freeman in his apartment overnight, continuously burning her with a clothing iron. Tonia Hamilton testified that when she showed up at the apartment, she found Freeman hidden behind the bathroom door. Robinson's proposed testimony does not negate this evidence. Thus, Robinson cannot say that the outcome of the proceeding, at least related to his kidnapping charge, would have been different.

Furthermore, the Court does not find credible Robinson's assertion that Mr. Kincade promised him a 10-year plea deal. The facts surrounding this case are particularly heinous. Robinson burned his developmentally delayed girlfriend with a clothing iron repeatedly over the course of several hours, disfiguring between 50% and 70% of her body.  Many of the responding emergency room personnel and law enforcement officers testified that the victim's injuries were among the worse they had ever seen. It is very unlikely that the State would offer such a favorable plea deal to Robinson under these circumstances, or that Mr. Kincade would promise such an unrealistic deal. And there is simply no evidence, other than Petitioner's conclusory statement, that he was offered that plea deal. This claim should be DISMISSED.

C. Failing to Object to Blood Evidence

Robinson argues that trial counsel was ineffective for failing to object to blood evidence introduced at trial because there was an unknown male in Petitioner's apartment at the time of the offense. [doc. #1-2, p. 35]. Even assuming that trial counsel was deficient in failing to object to the blood evidence, Robinson fails to show prejudice resulting from counsel's actions.

15

Evidence that a third man was in the apartment at the time of the offense does not exculpate Robinson. For example, Robinson does not allege that the man who was allegedly cuckolding him was the actual perpetrator. Robinson asserts that he walked in on Freeman having an affair, he got into a physical altercation with the man, and the man ran out of the apartment. [doc. #12-1, p. 75]. Robinson then prevented Freeman from leaving and proceeded to repeatedly burn her with an iron over the course of several hours. By Robinson's own testimony, this third individual was not even present when the crimes at issue were committed. Majority, if not all, of the blood at the scene belonged to Freeman, and Robinson could not be excluded as a contributor to the other DNA found at the scene.[3] Thus, Robinson cannot show that, but for counsel's alleged error, that the result of the proceeding would have been different**.**

### D. Counsel's Failure to Object to Indictments and Failure to File Motion to Quash

Robinson asserts that the State erred in charging him by bill of indictment rather than by bill of information. [doc. #1-2, p. 42]. He contends that he was subjected to double jeopardy, and his trial counsel was ineffective for failing to file a motion to quash. *Id.*

There is no constitutional right to a charge by bill of information. The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime,

---

[3]  The Court read the trial testimony of Michelle Vrana, a forensic DNA analyst and DNA Operations Manager at the North Louisiana Crime Lab in Shreveport, Louisiana. [doc. #14-2, pp. 7-16]. Ms. Vrana tested ten pieces of evidence from the Robinson residence: (1) a DNA swab from Petitioner; (2) a DNA swab from Ester Freeman; (3) the iron; (4) a pair of scissors and suspected hair; (5) a belt; (6) a broken belt buckle; (7) blood from the bathroom; (8) blood from the bedroom; (9) blood from the living room; and (10) blood from a pillow. *Id.* at 11. Ms. Vrana testified that the DNA she obtained from the blood on the iron and in the bathroom, bedroom, and living room belonged to Freeman. *Id.* at 15. She further testified that two DNA profiles were found on the iron, and that Petitioner could not be excluded as one of those DNA profiles. *Id.* Ms. Vrana did not indicate that a third DNA profile was found on any of these items, or that some of the blood she tested belonged to a third individual. Accordingly, Robinson's claim that some of the blood at the scene belonged to a third individual is unsupported in the record.

unless on . . . indictment of a Grand Jury." U.S. CONST. amend. V. However, there is no federal constitutional right to a grand jury in state prosecutions. *Liner v. Phelps*, 731 F.2d 1201, 1203 (5th Cir. 1984).

Article 382 of the Louisiana Code of Criminal Procedure, as amended, provides that a "prosecution for an offense punishable by death, or for an offense punishable by life imprisonment, shall be instituted by indictment by a grand jury. Other criminal prosecutions in a district court shall be instituted by indictment or by information." LA. C. CRIM. P. art. 382. Robinson was originally charged with second degree kidnapping and attempted second degree murder. Neither offense carries an exposure to death or life imprisonment. Thus, the district attorney was within his discretion to institute the prosecution "by indictment or by information." Before trial, Robinson's original indictment was amended to charge him with aggravated second degree battery and second degree kidnapping. "[Louisiana d]istrict attorneys are empowered to amend indictments to charge lesser offenses." *State v. Davis*, 385 So.2d 193, 198 (La. 1980). Indeed, Louisiana prosecutors "may abandon the charge of the greater crime and proceed with the prosecution for the lesser crime, and no formal indictment is necessary for that purpose." *State v. Young*, 615 So.2d 948, 950 (La. Ct. App. 1st Cir. 1993). Robinson was in no way subjected to double jeopardy and his counsel's performance was not deficient in this regard.[4]

---

[4] The Double Jeopardy Clause of the Fifth Amendment provides, in pertinent part, ". . . . nor shall any person be subject for the same offence be twice put in jeopardy of life or limb . . . ." U.S. CONST. amend. V. Double Jeopardy "guarantees that the government, with all its resources and power [will] not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense, and ordeal and compelling him to life in a continuing state of anxiety and insecurity. . . ." *U.S. v. Deshaw*, 974 F.2d 667, 670 (5th Cir. 1992) (internal citation omitted). Double jeopardy attaches in a jury trial when the jury is empaneled and sworn in. *Crist v. Bretz*, 437 U.S. 28, 28 (1978). Thus, double jeopardy had not yet attached between Robinson's initial indictment and the superseding bill of indictment.

Robinson further argues that counsel was ineffective for failing to file a motion to quash the indictment because he never should have been charged with second degree kidnapping. He complains that he never kidnapped the victim because he never took her, against her will, from one location to another. Robinson's argument misses the mark because a defendant need not carry a victim from one location to another against his or her will to be convicted of second degree kidnapping in Louisiana. Robinson was convicted of second degree kidnapping because he imprisoned and/or forcibly secreted Freeman while she was "physically injured". *See* LA. R.S. § 14:44.1. As described more fully *infra* under claim six, there was sufficient evidence to convict Robinson of second degree kidnapping under Louisiana law. Thus, Robinson cannot show deficient performance or prejudice for his counsel's failure to challenge the superseding indictment. This claim should be DISMISSED.

### E. Allowing Discrimination in Jury Selection

Robinson asserts that trial counsel was ineffective for allowing discrimination in selection of the grand jury foreman and petit jurors. [doc. #1-2, p. 44]. He argues that counsel should have used "peremptory challenges to remove biased jurors," and that counsel's failure to do so "allowed several biased jurors to be seated." *Id.* at 45.  He alleges that Ouachita Parish has systematically discriminated against African Americans in the selection of grand jury foremen from 1970 to 2013. *Id.* at 46. He also claims that the Prosecutor used his peremptory challenges to strike all potential African Americans jurors except one. *Id.* at 47.

First, Robinson does not allege which, if any, "biased jurors" were sat as a result of counsel's failure to exercise peremptory challenges. Therefore, this argument is too conclusory to warrant habeas relief.

Second, Robinson has failed to demonstrate a prima facie case of discrimination in the

selection of his grand jury foreman.

> To establish a prime facie case of discrimination in the selection of a grand jury foreman, a petitioner must demonstrate: 1) that the group against whom discrimination is asserted is a distinct class, singled out for different treatment; 2) the degree of underrepresentation by comparing the proportion of the group in the total population to the proportion called to serve as foremen over a significant period of time; and 3) that the selection procedure is susceptible to abuse or is not racially neutral. This prima facie case may then be rebutted by evidence that objective, racially neutral criteria were used in the selection process.

*Johnson v. Puckett*, 929 F.2d 1067, 1071-72 (5th Cir. 1991).

African Americans are an identifiable group capable of being singled out for disparate treatment; thus, it is undisputed that the first element is satisfied. However, elements two and three of Petitioner's prima facie case are not satisfied. Robinson alleges, without any evidentiary support, that only 1% of grand jury foremen in Ouachita Parish are African American and that between 1970 and 2013, African Americans were systematically underrepresented as grand jury foremen. Robinson "must produce evidence showing that the percentage of minority persons in the general population who were qualified to serve as grand jurors was disproportionate to the number of minority grand jury foremen actually selected over a significant period of time." *Pierre v. Leger*, No. 09-1881, 2011 WL 2559879, *14 (W.D. La. May 16, 2011). Robinson fails to state what percentage of African Americans were qualified to serve as grand jurors in Ouachita Parish. He also submitted no factual evidence whatsoever to support his conclusory claim that African Americans are underrepresented in the selection of grand jury foreman in Ouachita Parish. Therefore, he has failed to satisfy element two. *See id*; *Turner v. Quarterman*, No. 04-104, 2006 WL 2663808, *4 n. 3 (S.D. Tex. Sept. 14, 2008) (noting that "[a]side from mere conclusory statements, Turner has not produced any evidence that discrimination existed in selection of the grand jury foreperson.").

As to element three, Louisiana law provides that, after the grand jury is indiscriminately chosen, "[t]he court shall cause a random selection to be made of one person from the impaneled grand jury to serve as foreman of the grand jury." LA. C. CRIM. P. art. 413. Because grand jury forepersons are selected at random, Louisiana's procedure is racially neutral and not subject to abuse. *Compare Pierre*, 2011 WL 2559879, *13 (noting that the pre-1999 version of Article 413 gave the trial judge unilateral authority to select one member of the grand jury as the foreman, "outside the usual random selection procedures"—a procedure that was subject to abuse). Thus, Robinson has not satisfied element three.

Third, Robinson contends that the prosecutor impermissibly struck all but one African American juror on the basis of race. A party's racially discriminatory use of peremptory challenges violates the Equal Protection Clause of the Fourteenth Amendment. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986); *Georgia v. McCollum*, 505 U.S. 42, 46 (1992). Trial courts use a three-step analysis in evaluating a defendant's claim that the State exercised peremptory challenges on the basis of race. *Batson*, 476 U.S. at 96-98. First, "a defendant must make a *prima facie* showing that the prosecutor exercised his peremptory challenges on the basis of race." *Id.* at 96. "Once the defendant makes a *prima facie* showing, the burden shifts to the State to come forward with a [race] neutral explanation . . . ." *Id.* at 97. The "trial court then will have the duty to determine if the defendant has established purposeful discrimination." *Id.* at 98.

To establish a prima facie case, the objecting party: "(1) must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove members of that group from the venire; (2) is entitled to rely on the fact 'that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate'; and (3) must show that these facts and circumstances raise an inference

that the prosecutor exercised peremptory challenges on the basis of race." *Price v. Cain*, 560 F.3d 284, 286 (5th Cir. 2009) (citing *Batson*, 476 U.S. at 96)).

The objecting party makes a prima face case by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred. The objecting party does not have to show that "more likely than not" the peremptory challenge was based on impermissible group bias. *Johnson v. California*, 545 U.S. 162, 171-72 (2005). The burden upon the objecting party is therefore a "light burden," for purposes of establishing a prima facie case. *Price*, 560 F.3d at 287.

Here, the State exercised seven peremptory challenges, two of which were exercised on potential African American jurors, namely Mr. Smith and Ms. Castine. [doc. #12-4, pp. 101-02, 108-09; doc. #12-5, p. 1]. Defense counsel also exercised two peremptory challenges on potential African American jurors, namely Ms. Toney and Ms. Nash. *Id.* Robinson's jury consisted of one African American, Ms. Williams. The two alternate jurors, Ms. Soileau and Mr. Goods, were also African American.

Robinson has failed to make a prima facie case that the prosecutor exercised peremptory challenges on the basis of race. The State did not exercise all of its peremptory challenges. The State struck only two African American jurors, while also striking five white jurors, leaving one African American on the jury and two African Americans as alternate jurors. These facts do not give rise to an inference that the prosecutor exercised peremptory challenges based on race. *Compare Price v. Cain*, 560 F.3d 284, 287 (5th Cir. 2009) (prima facie case demonstrated where the State used half of its twelve peremptory challenges to strike African Americans, resulting in an all-white jury); *and Miller-El v. Cockrell*, 537 U.S. 322, 342 (2003) (prima facie case made where ten of prosecutor's fourteen peremptory strikes were used against African Americans);

*with Rivers v. Thaler*, 389 F.App'x 360, 362-63 (5th Cir. 2010) (prima facie case not demonstrated where Petitioner merely alleged, without more, that the prosecutor used three strikes against African Americans, resulting in an all-white jury); *and Higgins v. Cain*, 720 F.3d 255, 266 (5th Cir. 2013) (prima facie case likely not demonstrated where State used peremptory challenges to strike three potential African American jurors, "but it had also exercised a peremptory challenge to exclude one potential white juror," and one African American juror remained on the panel).

Moreover, the voir dire responses of both Mr. Smith and Ms. Castine "made them entirely predictable targets of state peremptory challenges for specific, objective, and trial-related reasons other than race." *See Higgins*, 720 F.3d at 266 (quoting *State v. Jacobs*, 803 So.2d 933, 959 (La. 2001)). Both Ms. Castine and Mr. Smith explained that they had a bad experience with law enforcement and Mr. Smith said he was mistreated by a police officer. [doc. #13-4, pp. 21-22]. Ms. Castine also said she worked as a nurse at E.A. Conway, the hospital where Robinson and Hamilton brought Freeman to be treated for her extensive burn injuries. [doc. #13-3, pp. 42-44]. Ms. Castine knew three potential hospital witnesses that were going to be called at trial. *Id.* at 47, 72-73. Both explanations gave the State reason to believe that the potential jurors in question would be biased against law enforcement witnesses, as well as the witnesses that Ms. Castine knew. As such, Mr. Kincade's failure to raise a *Batson* challenge did not amount to deficient performance.

Lastly, Robinson contends that the state trial court erred in failing to give him a hearing on his ineffective assistance of counsel claims. He also requests a hearing with this court. "When the district court has sufficient facts before it to make an informed decision on the merits of the habeas petitioner's claim, it does not abuse its discretion in failing to conduct an evidentiary

hearing, even where no factual findings are explicitly made by any state court." *Gallegos v. Quarterman*, 265 F. App'x 300, 303 (5th Cir. 2008). The undersigned finds that there was sufficient facts before it, as well as before the state courts, to make an informed decision on the merits of Robinson's ineffective assistance claims. Therefore, the state trial court did not err in denying Robinson a hearing, and Robinson's request for a hearing on the instant motion should be DENIED.

Robinson's ineffective assistance of counsel claims fail. The Louisiana Supreme Court's decision was not contrary to, or an unreasonable application of, clearly established federal law. Claims two and four should be DISMISSED in their entirety.

Claim Three: Prosecutorial Misconduct

Robinson argues that his convictions and sentence were the "result of knowing and intentional prosecutorial misconduct." [doc. #1-2, p. 48]. He alleges that the State "violated code of conduct" when it failed to excuse juror number 156, Amanda Volentine, who was apparently acquainted with the prosecutor. *Id.* He also alleges that the prosecution committed a *Brady* violation by "deliberately mislead[ing] the court concerning the exculpatory benefits of DNA (blood samples) collected" at the scene of the crime. *Id.* at 49. He states that some of the blood at the scene actually belonged to a man that Freeman was having an affair with and that the prosecutor withheld this fact. *Id.*; doc. #16, p. 19. He also alleges that the prosecution misled the jury and court regarding the extent of the victim's burn injuries. *Id.*

To prevail on a claim of prosecutorial misconduct, a petitioner must demonstrate that the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Geiger v. Cain*, 540 F.3d 303, 308 (5th Cir. 2008) (citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). A petitioner must show that the prosecutor's misconduct

23

was "persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper" conduct. *Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988).

As to Robinson's claim related to petit juror Amanda Volentine, that claim is without merit. During voir dire, the prospective jurors were asked if they knew the prosecutor, Mr. Jones. [doc. #13-4, p. 88]. Ms. Volentine stated that she "was just introduced to Jerry Jones before through one of [her] friends." *Id.* She clarified that the introduction was "[n]ot recently. This was about a year ago at Sam's." *Id.* There was no further questioning of Ms. Volentine. Other than noting that Mr. Jones was "acquainted" with Ms. Volentine, Robinson advances no other argument in support of prosecutorial misconduct in this regard. The prosecutor's acquaintance with a jury member is, without more, insufficient to show that Robinson's trial was "so infected with unfairness as to make the resulting conviction a denial of due process." For example, there is no indication that Ms. Volentine and Mr. Jones had any ongoing contact after they met.  As such, this claim should be DISMISSED.

Robinson's *Brady* claims are also without merit.[5] "[T]he suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

---

[5]  Federal habeas courts decide whether the state court's *Brady* determination resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established federal law. *Dickson v. Quarterman*, 462 F.3d 470, 477-78 (5th Cir. 2006). Robinson raised his prosecutorial misconduct claims before the Louisiana Supreme Court, but that court did not address these claims in its opinion denying writ. Moreover, the Louisiana appellate court briefly denied writ "upon the showing made" as to all of Robinson's post-conviction claims. The record is missing page two of the state trial court's ruling denying Robinson's application for post-conviction relief. *See* doc. #15-3, pp. 46-47. As such, this Court is unsure if the state trial court addressed the instant claims. Robinson's prosecutorial misconduct claims are without merit regardless of whether the state courts reached these claims on the merits.

24

*Dickson*, 462 F.3d at 477 (citing *Banks v. Dretke*, 540 U.S. 668, 691 (2004)). To prevail on a *Brady* claim, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Id.* (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1991)). Evidence is material[6] where there exists a "reasonable probability" that had it been disclosed the result at trial would have been different." *Id.* A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *U.S. v. Bagley*, 473 U.S. 667, 682 (1985). The reversal of a conviction "require[s] . . . a showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Banks*, 583 F.3d at 310 (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)) (internal citation omitted).

Robinson essentially claims that Freeman provoked his actions because Robinson walked in on her having an affair with another man. Robinson claims that the prosecution misled the jury concerning the "exculpatory benefits" of blood samples found at the scene. [doc. #16, p. 19]. He claims that the prosecutor withheld from the jury that some blood belonged to the man with whom Freeman was having an affair. *Id.*

First, this "evidence" was not suppressed by the State. Robinson knew of the alleged affair. According to Petitioner, he got into a physical altercation with the man and the man ran out of Robinson's residence. Robinson then went on to burn Freeman with the iron several times

---

[6] "[T]he Supreme Court has emphasized four aspects of the *Brady* materiality inquiry. First, a materiality showing does not require demonstration by a preponderance of the evidence that disclosure of the suppressed evidence would have resulted in acquittal; second, the materiality inquiry is not a sufficiency-of-the-evidence test; third, once materiality is established, harmless error analysis has no application; and fourth, materiality must be assessed collectively, not item by item." *Banks v. Thaler*, 583 F.3d 295, 311 (5th Cir. 2009).

over the course of several hours. Robinson was free to bring up these details at trial or use them as part of a defense strategy. *See Gibbs v. Johnson*, 154 F.3d 253, 256 (5th Cir. 1998) (noting that "[t]here is no duty to furnish a defendant with exculpatory evidence that is fully available to the defendant through the exercise of reasonable diligence" or in a situation "where the defendant would have known about the 'withheld' evidence.").

Second, even if the State did suppress this information, Robinson has failed to show materiality. This alleged "blood evidence" does not exculpate Robinson,[7] and it would not have provided impeachment sufficient to put the whole case in a different light as to undermine confidence in the verdict. By Robinson's own testimony, the man with whom Freeman was allegedly having an affair was not present when the crimes at issue were committed. Robinson got into an altercation with the man, who then ran out of the apartment. Robinson then prevented Freeman from leaving and proceeded to repeatedly burn her with an iron over the course of several hours. As stated above, majority of the blood at the scene belonged to Freeman, and Robinson could not be excluded as a contributor to the other DNA found at the scene. In any event, the record does not support Robinson's claim that a third individual's blood was found at the scene.[8] This claim should be DISMISSED.

Finally, Petitioner claims that the prosecutor misled the jury concerning the extent of Freeman's injuries. He contends that Freeman's medical records show that only 40% of her body sustained burn injuries, while the prosecutor told the jury that 70% of Freeman's body sustained

---

[7] Indeed, Robinson admitted in a written statement to police that he burned Freeman with an iron several times, *see* doc. #12-1, p. 58, and he also admits to doing so in the instant petition. *See* doc. #1-5, p. 14; doc. #1-2, p. 22 (citing to his own statement to police explaining why he burned Freeman); doc. #1-2, p. 32.

[8] *See supra* note 3.

burn injuries. [doc. #16, p. 19]. During closing arguments, the prosecutor said "fifty to seventy percent of her body [was] burned with that iron." [doc. #14-3, p. 78]. Contrary to Robinson's assertions, the prosecutor's statement appears to be supported by the record. A nurse who treated Freeman testified that Freeman "literally had iron prints all over her body except for her back. Just an area right down her back where apparently she was laying. Truly the worst I've ever seen." [doc. #14-1, p. 64]. A medical doctor who treated Freeman also testified that "[s]he was quite injured because of the degree of her burns. Greater than fifty percent; I suspect seventy per[c]ent body surface area, burns." *Id.* at 86. Thus, the prosecutor did not mislead the jury.

Claim three should be DISMISSED in its entirety.

Claim Five: Excessive Sentence

Robinson argues that his sentence of 110 years was unconstitutionally excessive where Robinson was only 33 years old at the time with no prior felony convictions. [doc. #1-2, p. 53]. In the instant case, Robinson was adjudicated a second felony offender and received the maximum allowable sentences for both convictions: 80 years for second degree kidnapping and 30 years for aggravated second degree battery.

To the extent that Petitioner is claiming that his sentence is excessive under Louisiana law or that the trial court failed to comply with state sentencing procedures, that claim is not cognizable in this federal proceeding. *See Pierre v. Radar*, No. 11-55, 2012 WL 3026790, *6 (E.D. La. June 18, 2010) (cases cited therein). Federal habeas corpus relief is available only for violations of federal constitutional law.

Moreover, insofar as Robinson asserts that his sentence is excessive under the federal constitution, that claim is likely barred from review for lack of exhaustion. On appeal to the Louisiana Supreme Court, Robinson argued that his sentence was excessive; however, his

arguments were based exclusively in state law. [doc. #15-2, pp. 25-27].  Some Louisiana district courts hold that failure to cite the federal constitution before the state's highest court bars federal habeas review of the claim for lack of exhaustion. *See Lane v. Warden La. State Penitentiary*, No. 09-2153, 2013 WL 1152713, *4 (W.D. La. Feb. 25, 2013) (Petitioner's excessive sentence claim was unexhausted where he did not invoke the Eighth Amendment in his arguments to the state court). However, because the Louisiana Constitution affords no less protection than the Eighth Amendment, some district courts find that excessive sentence claims based on the Louisiana Constitution are nonetheless exhausted. *See Davis v. Cain*, 44 F.Supp 2d 792, 795-96 (E.D. La. 1999) (cases cited therein).

Even assuming this claim is exhausted, it lacks merit. "[T]he Eighth Amendment does not require strict proportionality between crime and sentence, but rather forbids only extreme sentences that are grossly disproportionate to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 959 (1991); *see Lindsey v. Cain*, 267 F. App'x 374, 374 (5th Cir. 2008). Thus, "[a] federal court considering a habeas petition will not upset a state sentence within the statutory limits unless the sentence is so disproportionate to the offense as to be completely arbitrary and shocking." *Simmons v. Cain*, No. 06-2130, 2008 WL 2185422, *8 (E.D. La. May 20, 2008).

A determination of whether a sentence is grossly disproportionate for a particular crime begins by comparing the gravity of the offense and the severity of the sentence. *Graham v. Florida*, 130 S.Ct. 2011, 2022 (2010). Only if the Court infers that the sentence is grossly disproportionate to the offense will it then compare the sentence received to "(1) sentences for similar crimes in the same jurisdiction and (2) sentence for the same crime in other jurisdictions." *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992). In *Rummel v. Estelle*, 445 U.S. 263 (1980), the Supreme Court established a "benchmark" for disproportionate

punishment under the Eighth Amendment when it upheld a sentence of life imprisonment for a defendant's obtaining $120.75 under false pretenses. "[T]he life sentence approved in *Rummel* falls on the constitutional side of the line, thereby providing a litmus test for claims of disproportionate punishment". *U.S. v. Gonzales*, 121 F.3d 928, 943 (5th Cir. 1997).

The foregoing authority compels a finding that Robinson's sentence was not grossly disproportionate in light of the severity of his offenses. Both of Robinson's crimes were crimes of violence, and the state court noted "the gravity and viciousness of the offenses." *Robinson*, 127 So.3d at 1007. Robinson also had a lengthy history of domestic abuse against former girlfriends. *Id.* The trial court stated that "this is the most serious such violation and the worst offender of this type the Court has ever seen." *Id.* On appeal, the court rejected Robinson's claim that his sentence was excessive. The appellate court reasoned,

> [W]e agree that Robinson's sentence is extreme; however, the nature of his crimes is particularly gruesome, warranting an extreme sentence. The crime against Ester, a mentally disabled individual and mother of Robinson's infant child, was extremely vicious and heinous. Further, not only did Robinson terrorize Este[r], but the effect of his crime was so horrendous that even seasoned emergency room personnel were traumatized. Independently, this crime was particularly gruesome, but we also acknowledge Robinson's history of abuse and propensity to re-offend if not incarcerated. We agree that Robinson poses an extreme danger to public safety, and these consecutive sentences running for 110 years without benefits certainly does not shock the sense of justice. The trial court was well within its discretion in ordering maximum sentences to run consecutively.

*Id.* at 1007-08. The undersigned cannot say that the state court's rejection of Robinson's argument was contrary to, or an unreasonable application of, clearly established federal law. Claim five should be DISMISSED.

Claim Six: Insufficient Evidence to Support Second Degree Kidnapping Conviction

Robinson argues that the evidence presented at trial was insufficient to support a conviction of second degree kidnapping. [doc. #1-2, p. 55]. He alleges that Freeman's own

testimony "shows that she was not imprisoned," and that he could not have imprisoned her because he left after the incident to get medical supplies for her injuries. *Id.* at 55-56. Robinson points out that Freeman could have left and gone to the neighbor's house or used her cell phone. *Id.* He also states that he never took Freeman "from one location to another." *Id.* at 57.

Robinson argued this same claim on appeal in state court. The state appellate court affirmed his conviction and sentence. When a *habeas* petitioner asserts that the evidence presented to the court was insufficient to support his conviction, the limited question is whether the state court's decision to reject that claim was an objectively unreasonable application of the clearly established federal law as set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Williams v. Puckett*, 283 F.3d 272, 278-79 (5th Cir. 2002). A conviction is based on sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. The *Jackson* inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Thus, a conviction may rest on sufficient evidence "even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

In Louisiana, second degree kidnapping is defined as follows:

A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:

(1) Used as a shield or hostage;

(2) Used to facilitate the commission of a felony or the flight after an attempt to commit or the commission of a felony;

(3) Physically injured or sexually abused;

(4) Imprisoned or kidnapped for seventy-two or more hours, except as provided in R.S. 14:45(A)(4) or (5); or

(5) Imprisoned or kidnapped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.

B. For purposes of this Section, kidnapping is:

(1) The forcible seizing and carrying of any person from one place to another; or

(2) The enticing or persuading of any person to go from one place to another; or

(3) the imprisoning or forcible secreting of any person.

LA. R.S. § 14:44.1. As such, Robinson's argument that he did not take the victim from one place to another against her will is irrelevant. "The forcible seizing and carrying of any person from one place to another" is just one of three ways the statute defines kidnapping.

On appeal, the Louisiana appellate court invoked and applied the *Jackson* standard, and it did not do so unreasonably. *See Robinson*, 127 So.3d at 1004-06. The appellate court set forth the testimony and evidence presented at trial as follows:

> Ester testified that Robinson held her at the apartment for a period in excess of 12 hours—from late Friday afternoon until sometime Saturday when Tonia arrived to check on her. During this time, he admittedly beat her and burned her over 70 percent of her body. Ester told the emergency room personnel, Cpl. Foy, and Dep. Zuber that Robinson made her stay in the apartment by threatening to take or harm her infant child. Notably, Ester testified that she did not have a cell phone when the incident occurred, nor did she have a car. In addition, Robinson made Ester hide behind the bathroom door so that she would not be seen when Tonia knocked at the door. Moreover, Ester was not in any condition to independently seek help; she was severely beaten and burned and terrified that Robinson would make good on his threats if she tried to leave.

*Id.* 1005.

Applying the *Jackson* standard, the appellate court held that the aforementioned evidence was sufficient to support Petitioner's conviction of second degree kidnapping. *Id.* The court

reasoned,

> Here, the evidence is more than sufficient to support the conviction of second degree kidnapping . . . . The jury reasonably credited the testimony of Ester and the medical providers who treated her. There was ample evidence to support the jury's reasonable conclusion that Robinson forcibly secreted Ester, and held her against her will while she was severely physically injured. Ester's testimony alone is sufficient to support the conviction of second degree kidnapping, despite Robinson's argument to the contrary. Considering the totality of the circumstances, the fact that Robinson left Ester alone for a short time does not suggest Ester could have actually gotten away. Thus, this assignment is without merit.

*Id.* at 1005-06.

The undersigned finds that the state court did not unreasonably apply the *Jackson* standard. Robinson's guilt on the charge of second degree kidnapping was primarily established through the testimony of Freeman and Tonia Hamilton. Hamilton and Robinson had two children together. The day of the incident, Robinson was supposed to pick up the children from Hamilton's home, but Robinson called Hamilton and said he could not pick up the children because was blood everywhere. [doc. #14-1, p. 15]. Hamilton testified that she went over to Freeman and Robinson's home because she suspected that something was wrong. *Id.* at 16. When Hamilton arrived at their home, Robinson answered the door and barely cracked the door open. *Id.* Hamilton testified that she pushed the door open with her hand and saw blood everywhere. *Id.* at 17. Initially, she did not see Freeman. *Id.* Hamilton searched through the small apartment and found Freeman in the bathroom hidden behind the door. *Id.* Robinson initially did not want to take Freeman to the hospital, but eventually the two of them took Freeman to E.A. Conway hospital in Monroe. *Id.* at 20-21.

Freeman testified that Robinson burned her with an iron repeatedly from the afternoon of Friday, October 2nd up until early morning of Saturday October 3rd. [doc. #14-3, p. 3]. She also testified that she did not leave the apartment because Robinson would not let her and because he

made threats toward her and her child if she tried to leave. *Id.* at 6, 33. She testified that

Robinson told her to hide behind the bathroom door before Hamilton arrived. *Id.* at 32. Freeman

further testified that Robinson kept her in the apartment until Hamilton arrived, and that she

could not leave. *Id.* at 43-44.

The aforementioned testimony, coupled with Robinson's threats to Freeman and her child

and the hours of physical abuse she sustained at Robinson's hand, are sufficient to establish that

Robinson imprisoned or forcibly secreted Freeman while she was physically injured. *See State v.*

*Arbuthnot*, 625 So.2d 1377, 1384 (La. Ct. App. 1st Cir 1993) (affirming second degree

kidnapping conviction where the victim had a brief moment where he could have physically left,

noting that the victim's fear of what would happen kept him from leaving). In sum, viewing the

evidence in the light most favorable to the prosecution, it cannot be said that Robinson's

conviction of second degree kidnapping was irrational.

Claim six should be DISMISSED.

## Conclusion

For the reasons stated above, **IT IS RECOMMENDED** that the Petition for *habeas*

*corpus* filed by Petitioner Allen Robinson, [doc. #1], be **DENIED and DISMISSED WITH**

**PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by

this Recommendation have **fourteen (14) days** from service of this Report and Recommendation

to file specific, written objections with the Clerk of Court.  A party may respond to another

party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.**  *See* 28 U.S.C. § 2253(c)(2).  **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

In Chambers, Monroe, Louisiana, this 6th day of July, 2017.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE